FILED

03/24/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2016 Session

**JAMES R. GOAN ET AL. V. BILLY B. MILLS**

**Appeal from the Circuit Court for Hawkins County**
**No. 09CV0375      Alex E. Pearson, Judge**

_____

**No. E2016-01206-COA-R3-CV**
_____

Plaintiff James R. Goan's mail delivery vehicle was rear-ended by a vehicle driven by Billy B. Mills as Plaintiff was delivering mail. The Plaintiff and his wife, Judy Goan, sued Mills. During settlement negotiations, Plaintiffs offered to settle for $100,000, the limits of Defendant's insurance policy. Defendant accepted the offer on December 4, 2013. Over a year later, Defendant filed a motion to enforce the settlement agreement. The Plaintiffs opposed the motion, arguing that there had been no meeting of the minds and no enforceable agreement. The trial court enforced the settlement agreement. The Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Thomas C. Jessee, Johnson City, Tennessee, for appellants, James R. Goan and Judy Goan.

Thomas L. Kilday, Greeneville, Tennessee, for appellee, Billy Bruce Mills.

**OPINION**

1

## I.

The accident occurred on August 22, 2008. Plaintiffs filed their complaint on August 17, 2009. Settlement negotiations ensued. The record contains correspondence between the lawyers for the parties. On April 26, 2013, Plaintiffs' counsel sent Defendant's counsel a letter saying:

> I met with Mr. Goan who advised he has been approved for back surgery by workers comp.[1] I believe the original medical bills that we have provided you totaled over $76,000.00. Obviously they have increased. I believe the federal workers comp subrogation was approximately $53,000.00. Obviously it is increasing. I have an agreement with comp that we can settle this case now, save the costs of medical discovery and keep the file open while we are waiting on his surgery. . . . If there is only $100,000.00 in insurance, I would demand the policy limits primarily because of workers comp.

(Footnote added.) On August 23, 2013, Plaintiffs' counsel sent another letter saying:

> We have ordered from workers comp the updated numbers on Mr. Goan. They tell us the total subrogation now is $78,000.00 . . . Given the $78,000.00, I go back to demanding the limits which I believe is $100,000.00 but as we discussed I need a firm number from you to figure out compromising the comp claim.

On November 6, 2013, Plaintiffs' counsel reiterated their offer, stating, "we would renew our demand for the policy limits of $100,000." This was followed by another letter on December 4, 2013, saying, "[p]er our discussion, my client has reject[ed] the $95,000.00 and renews his demand for the policy limits."

On December 4, 2013, Defendant's counsel sent Plaintiffs' attorney a letter saying:

> You have reiterated to me [Plaintiffs'] settlement position that they will accept [Defendant's] insurance liability limits of

---

[1] Because Plaintiff was injured on the job, his employer, the federal postal service, provided him workers' compensation benefits covering his medical expenses.

$100,000 in full settlement and release of all of their claims and out of which settlement funds all claims, liens and subrogation rights of all persons and entities would be satisfied, including the claim of the United States Postal Service or any related entity for which like benefits have been paid to or on behalf of James Goan, and that no medical expenses have been paid by Medicare, arising out of the August 22, 2008 accident. In reliance upon this representation, *this will advise that* [*Defendant*] *and his insurer, Tennessee Farmers, accepts the settlement offer*.

Pursuant to the foregoing I have requested the issuance of a settlement check and, upon its receipt, will provide it to you in exchange for the appropriate settlement documents which I will provide.

(Emphasis added.)

Over seven months later, Plaintiffs' counsel sent a letter on July 24, 2014, stating:

Mr. Goan has finally been released. Attached is the note from OWCP. As you can see our last number was only approximately $82,000.00. The new claim is $123,398.70. *You and I have your case settled*. Mr. Goan has uninsured motorist of $300,000.00 which would leave $200,000.00 available in this claim.

(Emphasis added.) Defense counsel replied four days later with a letter stating, "[a]s you have acknowledged in your letter, we have reached an agreement settling [Plaintiffs'] claim against [Defendant for his] insurance liability limits of $100,000 and since [Plaintiffs'] settlement demand was formally accepted we have been awaiting instructions on how the settlement proceeds should be distributed. . ."

On August 11, 2014, Plaintiffs moved to amend their complaint "to add Tennessee Farmers Mutual Insurance Company, the insurance carrier of plaintiff James R. Goan's uninsured and/or under insured motorist coverage, as a party defendant in this action." The trial court granted the motion and Plaintiffs filed an amended complaint.

Over eighteen months later, on February 19, 2016, Defendant filed a motion to enforce the settlement agreement. Plaintiffs filed a response in opposition on April 11, 2016, arguing, for the first time, that

> [d]uring settlement negotiations, counsel for the plaintiffs repeatedly demanded the limits of the liability insurance policy, believed to be $100,000.00. Eventually, counsel for the plaintiffs and [defense] counsel . . . agreed that the plaintiffs would accept the sum of $100,000.00, representing the policy limits of the defendant's liability insurance policy. Although the plaintiffs' counsel requested that [defense counsel] Mr. Kilday provide proof of the limits of the policy, Mr. Kilday failed to do so. Given the extent of plaintiff James R. Goan's injuries, the sum of $100,000.00 does not adequately compensate the plaintiffs.

Following a hearing on April 15, 2016, the trial court granted the motion to enforce the settlement agreement in an order entered April 28, 2016, stating that

> the Court is of the opinion and finds that an enforceable contract was entered into among the parties to settle the plaintiffs' claim of injuries and damages against the defendant resulting from a motor vehicle accident occurring on August 22, 2008 wherein the plaintiffs, James and Judy Goan, by and through their attorney, offered to settle their claim of injuries and damages against defendant Billy Bruce Mills for Mr. Mills' insurance liability limits of $100,000 which defendant Mills, by and through his attorney, accepted.

Plaintiffs filed a motion to reconsider, arguing that

> plaintiffs submit that it is clear from the correspondence between their counsel and Mr. Kilday that their counsel had no intention of executing a release of the claims against the defendant until the Declaration Page of the defendant's liability insurance policy was provided to plaintiffs' counsel, the Postal Service was advised, and the plaintiffs' uninsured/ underinsured insurance carrier, Tennessee Farmers, was advised and added as a party to the suit.

The trial court denied the motion. Plaintiffs timely filed a notice of appeal.

4

## II.

The issue presented, as quoted verbatim from Plaintiffs' brief, is whether the trial court err in granting the Defendant's Motion to Enforce Settlement, by determining that there was a binding contract of settlement between the parties? "The determination of whether a contract has been formed is a question of law" that we review de novo with no presumption of correctness. *Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015). In this case, there are no material facts in dispute.

## III.

Plaintiffs argue there was no meeting of the minds, and therefore no valid contract, because Defendant did not provide a copy of the declarations page of his liability insurance policy. Defendant responds that Plaintiffs' counsel never requested this document before settling the case, and that, in any event, everyone involved knew at all pertinent times that the liability policy limits were $100,000. The record supports Defendant's assertions. It is undisputed that the limits were $100,000, and that defense counsel confirmed this fact, when, by his letter, he accepted the settlement offer saying, "we have reached an agreement settling [Plaintiffs'] claim against [Defendant for his] insurance liability limits of $100,000." Four days after the declarations page was mentioned for the first time, Defendant provided a copy of it at the motion hearing. The fact that he did not provide it earlier is not relevant to the issue presented for the reason there is no evidence that Plaintiffs requested production of the page prior to setting the case.

Plaintiffs refer us to Tenn. Code Ann. § 56-7-1206 (2008), which provides in pertinent part:

> (a) Any insured intending to rely on the [uninsured motorist] coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though the insurance company were a party defendant.
>
> \*     \*     \*
>
> (f) Notwithstanding subsection (c), if a party or parties alleged to be liable for the bodily injury or death of the insured offers the limits of all liability insurance policies available to the party or parties in settlement of the insured's claim, the insured or the insured's personal representative

5

may accept the offer, execute a full release of the party or parties on whose behalf the offer is made and preserve the right to seek additional compensation from the insured's uninsured motorist insurance carrier upon agreement of the insured or the insured's personal representative to submit the insured's uninsured motorist claim to binding arbitration of all issues of tort liability and damages . . .

* * *

(g) Parties proposing to accomplish a settlement pursuant to this section shall comply with the following requirements and conditions:

(1) Upon request, the insured or the insured's personal representative or attorney shall provide the liability insurance company or companies providing coverage to the party or parties to be released, the name and address of the insurance company or companies providing the insured with uninsured motorist coverage, the policy number or numbers and the limits of uninsured motorist coverage available to the insured;

(2) The liability insurance company or companies providing coverage to the party or parties to be released shall give written notice of the offer to the insured's uninsured motorist insurance carrier or its attorney, provide verification of the coverage upon request and confirm to the uninsured motorist insurance carrier or its attorney that the party or parties to be released will agree in writing to cooperate with the uninsured motorist insurance carrier in connection with the arbitration of the uninsured motorist claim; provided, that the uninsured motorist insurance carrier will agree to waive its subrogation rights against the party or parties to be released[.]

Plaintiffs argue that Defendant's liability insurance carrier did not comply with subsection (g)(2) above, which requires "written notice of the offer to the insured's uninsured motorist insurance carrier." We note that, coincidentally, Defendant's liability carrier is the same company that provided Plaintiffs' uninsured motorist coverage.

More importantly, as Defendant argues, there is no documented reference to a potential claim by Plaintiffs under their uninsured/underinsured motorist policy until after

6

the settlement agreement was reached. The first reference in the record to such a potential claim is the letter written by Plaintiffs' counsel on July 24, 2014, long after the agreement on December 4, 2013. On August 11, 2014, Plaintiffs moved to amend their complaint to allege Defendant did not have adequate insurance coverage and to add their UM carrier as a defendant. Defense counsel filed his affidavit in which he stated, "[p]rior to receipt of [Plaintiffs' counsel's] letter of July 24, 2014 I was unaware of any uninsured motorist coverage which Mr. Goan had applicable to this accident, such had never been mentioned to me and no summons or other process had as of that time been issued to an uninsured motorist insurer for Mr. Goan." Thus, there is no indication that the parties were "proposing to accomplish a settlement pursuant to this section" of Tenn. Code Ann. § 56-7-1206, and it is inapplicable under the circumstances of this case.

In short, on December 4, 2013, Defendant sent Plaintiffs a letter stating, "You have reiterated to me [Plaintiffs'] settlement position that they will accept [Defendant's] insurance liability limits of $100,000 in full settlement and release of all of their claims" and "this will advise that [Defendant] . . . accepts the settlement offer." More than seven months passed with no objection from Plaintiffs, and then their counsel sent a letter on July 24, 2014, that said "[*y*]*ou and I have your case settled.*" (Emphasis added.) The trial court succinctly summed it up at the motion hearing:

> And then here's the crystal clearest language you could ever have. "You and I have your case settled." I can't interpret it any other way. The case is settled.

## IV.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellants, James R. Goan and Judy Goan. The case is remanded for such further action as may be necessary and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE